**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William LANE, Defendant-Appellant.**

No. 79–5312
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

John W. Benbow, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

William Lane, owner and operator of Bexar County [Texas] Ambulance Service, was convicted at a jury trial on twenty-nine counts of violating 18 U.S.C. § 1001 by making, and causing his employees to make, false, fictitious, and fraudulent statements on forms requesting Medicare payments for ambulance services which appellant's firm had not rendered.[1] In appealing his conviction Lane contends that the district judge committed several reversible errors in his conduct of the trial. For those reasons discussed below, we affirm the appellant's conviction.

---

1. 18 U.S.C. § 1001 provides:

    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

During 1975 and 1976 Lane operated the Bexar County Ambulance Service in San Antonio, Bexar County, Texas. Bexar County Ambulance was in the business of furnishing ambulance services to the general public, including those citizens who were entitled to "Supplementary Medical Insurance Benefits for the Aged and Disabled," as part of the program known generally as "Medicare." The grand jury indictment in this case alleged that Lane had submitted twenty-nine false claims to the Group Medical and Surgical Service in Dallas, Texas (familiarly known as Blue Cross-Blue Shield of Texas),[2] for ambulance services which had not been rendered.

At trial Lane was portrayed as having engaged in a calculated practice of submitting falsified Medicare claims. Specifically, the Government's case indicated that Lane had given his firm's secretary and office manager a number of legitimate claims which Bexar County Ambulance had filed previously with Blue Cross-Blue Shield and instructed his employees to prepare new claim forms using information taken from the legitimate claims. The "trip" information on the forms included the patient's name and address, and the specifics concerning the ambulance services rendered (i.e., pickup location, reason why ambulance service was necessary, delivery location, mileage, etc.). The only information *not* transferred from the old claims to the new claims was the correct date which identified when the ambulance service was rendered. The date was changed on all twenty-nine claims. Then the altered claims were submitted to Blue Cross-Blue Shield of Texas for payment. This resulted in Medicare claims being filed with Blue Cross-Blue Shield for ambulance services allegedly provided on a particular date when stipulated documentary evidence at trial established that, in fact, the Medicare patients named on the claim forms could not have been transported by Bexar County Ambulance on the dates specified on the claims because they either had died before the date of

transportation, had been hospitalized during the period that they were allegedly transported, or were already at the location to which they were allegedly transported.

At trial, after counsels' closing arguments were completed, the trial judge proceeded to charge the jury as to the law which it was to apply to the case. In what was an inadvertent omission, the trial judge skipped the first several pages of his instructions to the jury. Included on the omitted pages were the general instructions on the role of the jury as the trier of fact, the need for the jury to follow the court's instructions on the law, its duty to base its decision on the testimony in evidence without prejudice or sympathy, and the definition of "reasonable doubt." Neither the judge nor counsel caught the omission at the time and shortly after noon the jury retired to begin its deliberations. Immediately following its retirement the jury decided to break for lunch.

During the lunch hour, some ten minutes after the charge had been given, it dawned on the trial judge that his charge to the jury might not have been complete. As most of the court's staff was at lunch as well, it took the trial judge some time before he could consult with the official court reporter to confirm his suspicion that indeed he had omitted several pages of jury instructions. In the meantime the jury had finished its lunch, had returned to the courthouse, and had begun its deliberations on Lane's case. Before the trial court could reconvene with all parties present, the trial judge received a note from the jury announcing that it had reached a verdict.

While the jury remained in the jury room, the trial judge explained to counsel and the defendant what had happened, or perhaps more precisely what had not happened. The trial court then stated that, due to the incomplete nature of the charge, it would not accept the jury's verdict. Furthermore, in discussing the predicament

---

**2.** Blue Cross-Blue Shield of Texas was an agent of the United States authorized to act as paying agent in the distribution of funds pursuant to

claims submitted under the Medicare provisions of the Social Security Act. *See* 42 U.S.C. § 1395u.

with counsel for both sides in open court, the trial judge offered the defendant/appellant his choice of one of three options: 1) The court would recharge the jury with only the instructions omitted from the first charge; or 2) the court would recharge the jury with the complete charge, including the instructions which had been given and those which had been omitted; or 3) the court would declare a mistrial.[3]

The court allowed Lane and his attorney to confer privately in the back of the courtroom so that they could consider the options. After discussions with his attorney, Lane elected to have the court recharge the jury with the entire set of jury instructions which should have been given, but were not, the first time around. At no time during these proceedings did Lane or his attorney request that the jury's original verdict be disclosed.

At this point the jury was returned to the courtroom. The trial judge proceeded to explain to the jury what had occurred. At the conclusion of the explanation to the jury the trial judge asked counsel for both sides and the appellant himself if the explanation of the error had been satisfactory. Both counsel and Lane responded in the affirmative.

Immediately thereafter the trial judge proceeded to recharge the jury with the complete complement of instructions. However, with the agreement of counsel, the court added two instructions. The first was an instruction that upon returning to the jury room the jury should place the first unannounced verdict in an envelope, seal it, and have the foreman sign his name across the seal.[4] The trial court also instructed the jurors to "divorce your minds" from the

first verdict and "to start your deliberations anew in the light of the Court's charge as you have just now received it." Both Lane's attorney and the prosecutor agreed that the trial judge's supplementary instructions were satisfactory.

Thereupon, the jury again retired to consider the guilt or innocence of Lane. Less than one-half hour later the court received a note that the jury had reached a verdict on its second retirement. Lane was found guilty on all twenty-nine counts.[5]

On appeal, Lane raises four points of error. First, he contends that the trial court committed reversible error in recharging the jury because his waiver of a mistrial was not made in an intelligent, knowing and voluntary manner. Second, Lane claims the trial judge's comments to the jury before the recharge improperly coerced the jury in reaching its second verdict of guilty. The third claim of error is that the trial court erred in permitting Government witnesses to render conclusions and opinions beyond their testimonial knowledge. Fourth, Lane contends the trial court erred in not giving the jury the exhibits introduced during trial until a short time before the jury reached its first verdict. We will address these claims in turn.

In charging the jury the first time, the trial judge failed to instruct the jury on the definition of reasonable doubt, the presumption of innocence and the statement that the indictment or formal charge is not evidence of guilt. Neither the court nor counsel immediately noticed the omission.

The principal issue presented by this appeal is whether the appellant, Lane, is entitled to a new trial even though the appel-

---

3. In the words of the trial judge:

COURT: "I will not receive this verdict unless I give the additional charge, that's number one. I will not receive this verdict if counsel wants me to give the entire charge. I will give the entire charge. I will give the part that I left out or the entire charge or I will declare a mistrial, and he [the defendant] will have to go through the trial again."

4. On order of this court, the jury's sealed "first verdict" was unsealed, and it reflects that the

jury had unanimously found Lane guilty on all counts.

5. The appellant was sentenced to five years' imprisonment on each count of count one through count twenty-eight of the indictment, said sentences to run concurrently. He also received a five-year sentence on count twenty-nine with this sentence to run consecutively to counts one through twenty-eight. However, this sentence was suspended and a five-year period of probation was imposed.

lant agreed to have the trial court completely recharge the jury. Lane's position is that a new trial is required because his decision to waive any right he may have had to a mistrial was not made knowingly, voluntarily, and intelligently. Basically, Lane argues that because he did not know what the jury's first verdict was at the time he elected not to accept a mistrial, his waiver was not knowingly or intelligently made. In other words the trial judge should have declared a mistrial, and his failure to do so was plain error requiring a reversal. We disagree.

■ Having conducted a thorough review of the record, our conclusion is that the appellant's decision to forego a mistrial and request that the trial judge recharge the jury with the complete set of instructions amounted to a knowing, voluntary, and intelligent waiver of any right Lane may have had to a mistrial. We are not persuaded by Lane's argument on appeal that his waiver of the mistrial could not have been intelligently made since he was not informed at that critical time of the jury's first verdict. As noted above, Lane never requested that the court open the jury's first verdict and reveal it to him. Indeed, at one point there was a suggestion by counsel for Lane that the verdict form should perhaps be "destroyed." We note that if the trial court and the appellant had been informed of the jury's first verdict of guilty, there would have been no real decision for Lane to make since his only practical option would have been to accept a mistrial.

The trial judge offered Lane the option of declaring a mistrial. After uninhibited consultation with his attorney, Lane made a conscious and entirely voluntary decision to decline the mistrial option and elected instead to recharge the jury. We find nothing wrong in permitting a defendant to consult with counsel of his own choice in making decisions which affect his substantial rights, however critical those decisions may be. Apparently, Lane's decision to continue with the trial and recharge the jury must have been motivated by Lane's and his counsel's belief that he was going to obtain a favorable decision from that particular jury. Obviously, this strategic trial decision backfired. However, we do not think that this lost gamble amounts to an unintelligent and ineffective waiver of any of the defendant's substantial rights.

No miscarriage of justice occurred here. The appellant not only failed to object to the trial judge's first incomplete set of instructions and his proposed options for resolving the problem. Lane, after consultation with his attorney, specifically agreed that the court should charge the jury again with the complete set of instructions. The lower court's handling of this unusual situation certainly does not amount to error. Appellant's claim to the contrary is without merit.

■ The appellant's second claim of error is his contention that the trial judge's explanation to the jury before the recharge improperly "coerced" the jury in reaching its second verdict of guilty. Before recharging the jury with the complete set of instructions, the trial judge explained to the jury why he had refused to accept its first verdict, why the parties had agreed that the jury should be recharged, and the need for the jurors to "unlock" their minds. This explanation was given when the jury was returned to the courtroom. Both counsel and the defendant agreed that the explanation was satisfactory.[6] Lane now contends

---

6. THE COURT: Ladies and gentlemen of the jury, I have something of a surprise for you in one sense. Shortly after you were retired, the Court, within ten minutes, realized that there had been an important matter left out of the Court's charge that had been given to you. But I had no way of being sure about it because I am going to give you the full explanation here for the benefit—I have already done this to counsel.

Now, counsel in the case have reached an agreement that I recharge you in full and direct you additionally. I don't know what your verdict is. We haven't asked you for it. It hasn't been received by the Court. All I have is your note here at 2:40 that you had reached a verdict. And so I'm going to have to tell you that you are going to have to unlock your minds about this verdict, whatever it is. And I am

that this explanation amounted to "plain error" in that the trial judge's comments "improperly coerced" the jury in reaching a verdict on its second retirement.

We do not think that the trial judge's explanation of the unusual situation to the jury amounted to judicial coercion. Considering the unusual circumstances of this case, the explanation to the jury was necessary and reasonable. Both Lane and his attorney had the opportunity to object to the explanation as given, but chose not to do so. The explanation was not plain error.

Lane's third point of error is that the trial court erred in allowing the Government prosecutor and several of the Government's witnesses to use the words "false claims" in describing the twenty-nine Medicare claims which were the subject of the indictment.

At trial, in order to aid the presentation of its case, the Government employed a chart which listed and described the twenty-nine claims. The words "false claims" appeared on the chart next to each of the listed twenty-nine Medicare claims. Lane's attorney objected to the Government's use of the word "false" on the chart, and the trial court gave the jury a limiting instruction.[7] In addition, at several points during the trial, the Government attorney and several witnesses for the prosecution referred to some of the data included on the Medicare claims at issue or the claims themselves as "false."

The appellant's substantial rights were not prejudiced by the occasional references made at trial that the twenty-nine Medicare claims in question were "false" in whole or in part. In fact, the trial judge sustained the appellant's objection and instructed the prosecution witnesses to refer to the claims

going to recharge you in full so that you will get the proper influence of the totality of the charge as a whole. Then I'm going to retire you to the jury room to consider your verdict.

.        .        .        .        .

So I'm going to now ask you to unlock your minds, and we are going right back where we were before lunch, after the arguments of counsel had been finished. Do you understand?

I am now going to give the total charge to the jury, and this is what you are to go by. And I will again retire you from the Courtroom, briefly, to allow them to make any objections again just in case I overlooked a page or two again. However, this time I'm going to provide each one of them with a copy of what they saw this morning so they can doublecheck the Court on it. It's just one of those things that happen, and I'm sorry that it takes up this much time. But the parties shouldn't be put through this twice, and the jurors shouldn't be occupied with having to hear it again, other jurors. We shouldn't have to go through this again if we can rectify this oversight by the Court.

So I'm going to—Marshal, go in there and get two copies. I happen to have two, I made two copies, extra copies of it. I am going to have counsel, each one, have a copy so even one word cannot be altered or changed. So you will just have to bear with me on this. This was the Court's fault, my oversight. It's the only way I can explain it to you. But after 15 years on the bench, you know instinctively sometimes that things hit your mind, this is one of the things that hit my mind. I couldn't get my people together to get an immediate correction.

I had a charge reversed one time on just one phrase out of a charge that lasted about an hour and twenty minutes. One phrase. I didn't think that a phrase really made any difference, but the Appellate Court thought so. That was a reversal. So that's how meticulous, how careful the Court must be in the trial of these cases. You can do a six weeks trial and have it undone on account of one phrase. That's the way it ought to be. I don't find any fault with it. That's the reason you have appellate courts and reviewing courts. They review the trial court for error. If the trial court commits an error, that's why we have them to correct him so it won't happen again.

I will ask both counsel if the explanation of the error is satisfactory to both sides.

MR. JAHN (Assistant U. S. Attorney): Yes, sir.

MR. BENBOW (defense counsel): Yes, sir.

THE COURT: And the Defendant, you're agreeable to the explanation that I haven't left out anything.

THE DEFENDANT: Yes, Your Honor.

7. In its limiting instruction the lower court charged the jury that the Government's chart and summaries were merely aids to assist the jury in understanding the specifics of the Government's case. In the charge, the court emphasized several times that the chart was not evidence in and of itself. Furthermore, upon concluding its limiting instruction, the trial court specifically inquired whether defense counsel agreed with the instructions as given. Defense counsel voiced no objection to the trial judge's handling of the matter.

as "alleged false claims." The appellant and the Government entered into a stipulation which acknowledged the falsity of the claims by establishing that on the date that the patients were allegedly transported they either were dead, hospitalized, or already at the destination shown on the claim forms. This stipulation was read to the jury by the trial judge at the outset of the trial. In light of this stipulated evidence, the limiting instruction, and the trial court's direction to Government counsel that the Medicare claims be referred to as "alleged false claims," there is no error.

Finally, the appellant claims that he was prejudiced because the jury was not given the exhibits introduced during trial until several minutes before the jury reached its first unaccepted verdict. Before the jury had retired to begin its deliberations, counsel for both sides agreed which exhibits would be sent to the jury room for the jury's use during its deliberations. However, apparently due to the early return of the jury from lunch and its short deliberations before reaching the first verdict, the clerk of the court did not deliver the exhibits to the jury room until a few minutes before the jury concluded its first retirement.

Lane's attorney agreed to the court's suggestion that the exhibits would be delivered to the jury after lunch "on notice from the jury to the Marshal." The exhibits were at all times available to the jury at its request and indeed were delivered to the jury room before the jury completed its deliberations on its first retirement. We note that these exhibits had been extensively discussed before the jury during the course of the trial. Furthermore, the exhibits were available to the jury throughout the entire course of its deliberations during its second retirement. Lane's argument that the court erred in its handling of the exhibits is without merit.

AFFIRMED.